IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)   RYAN SMITH ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-26-47-GLJ |
| ) | |
| (1)   INDEPENDENT SCHOOL ) | |
| DISTRICT NO. 19 of Carter County ) | |
| a/k/a ARDMORE CITY SCHOOLS ) | JURY TRIAL DEMANDED |
| ) | |
| (2)   JILL DAY, individually ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW, Plaintiff herein, Ryan Smith, hereafter Plaintiff, and for his cause of action against Independent School District No. 19 of Carter County a/k/a Ardmore City Schools, hereafter "Defendant" or Ardmore Schools, alleges, and states as follows:

1. Plaintiff, Ryan Smith is a resident of Carter County, State of Oklahoma.

2. Defendant, Independent School District No. 19 of Carter County a/k/a Ardmore City Schools is a political subdivision of Carter County, State of Oklahoma.

3. Defendant, Jill Day, was Superintendent of Ardmore City Schools at all times complained of herein.

4. The claims alleged herein occurred in Ardmore, Oklahoma, Carter County, State of Oklahoma. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

5. This Court has original jurisdiction over all Counts pursuant to 28 U.S.C. § 1331 because the claims arise under the United States Constitution and laws of the United States.

6. As such, jurisdiction and venue are proper herein.

7. August 2023, Ryan Smith took a position as a girls' high school basketball coach with Ardmore Schools.

8. After his hiring, then Superintendent, Jill Day, made a comment to Mr. Smith letting him know that she preferred a white candidate for the position over him. This is the only time she ever spoke to him.

9. Throughout his employment, Jill Day, usurped Mr. Smith's chain of command to try and oust him from his position. This was unusual, as the Superintendent did not usually interfere in the day-to-day management of staff.

10. Eventually, Jill Day, latched onto the rantings of the parent of one of the players on Mr. Smith's team who disliked him because she felt her daughter did not get enough playing time.

11. This parent started a smear campaign against Mr. Smith utilizing a photo of him sitting on a couch with an unidentified woman that had been posted to social media.

12. The parent forwarded the photo to Jill Day with alleged concerns about his morality as he was cheating on his wife. However, Mr. Smith was not married at the time.

13. Despite the fact that Mr. Smith was not, in fact, cheating on anyone, Jill Day, stuck with this story to support the non-renewal of Mr. Smith's contract even though his principal and the athletic director desired to retain Mr. Smith.

14. At this point, Ms. Day was on a full-on campaign to get rid of Mr. Smith based on an easily disproved lie.

15. April 1, 2024, Mr. Smith was notified that his contract would not be renewed. The basis for the non-renewal was his "questionable morality" due to the alleged affair he was having.

16.     This was a new standard, as other non-black staff employed by Ardmore Schools actually had affairs and were retained.

17.     However, upon finding out that Mr. Smith's contract was not going to be renewed, the community reacted in support of Mr. Smith's continued employment. As a result, Mr. Smith was informed April 18, 2024, that his contract would be renewed.

18.     However, on or about May 22, 2024, with no notice to Mr. Smith, Ardmore Schools took no action to renew Plaintiff's contract for the 2024-2025 school year. This terminated Plaintiff's position with Ardmore Schools.

19.     Mr. Smith was not informed that his contract was not renewed at Ardmore Schools' May 22, 2024, meeting. He found out at graduation when he was speaking to another coach about his plans for the following school year. The coach informed him that he must not have seen the newspaper.

20.     Mr. Smith found out from a newspaper article he saw May 24, 2024, that his contract had not been renewed.

21.     Relying on the information he received April 18, 2024, Mr. Smith had turned down a coaching job from another school. By May 24, 2024, it was too late for Mr. Smith to get hired anywhere else for the 2024-2025 school year.

## COUNT I
## 42 U.S.C. § 1981- Discrimination and Retaliation on the Basis of Race

Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

22.     Mr. Smith, a black male, is a member of a protected class on the basis of race.

23.     Mr. Smith, in all respects, was performing his job in a manner that was consistent with Defendant's legitimate business expectations and training.

24. Defendant discriminated against Mr. Smith, as described above, including not limited to harassing him, subjecting him to a hostile work environment, and unlawfully terminating his employment based on pretextual performance issues.

25. Defendant also retaliated against Mr. Smith as described above.

26. Defendant's actions were taken with a willful and wanton disregard of Mr. Smith's rights under Section 1981.

27. As a direct and proximate result of said unlawful employment practices and in disregard of Mr. Smith's rights, he has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

### COUNT II
### 42 U.S.C. § 1983 - Discrimination and Retaliation on the Basis of Race in Violation of the Fourteenth Amendment

Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

28. 42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

29. Ardmore Schools is a political subdivision liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the subdivision caused violations of Plaintiffs' constitutional rights, and/or because school officials with final policymaking authority violated Plaintiff's constitutional rights.

30. Defendant Jill Day was the policymaker at the time of the events complained of herein.

31. At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the State of Oklahoma within the meaning of 42 U.S.C. § 1983.

32. Defendant Day's behavior occurred when acting within the scope of her employment and used incidents and tools of her employment.

33. Despite satisfactory job performance and the support of his supervisor and manager, Jill Day went on a mission to get rid of Mr. Smith, eventually latching onto an unfounded rumor to justify his termination.

34. Mr. Smith's termination was motivated in whole or in part by his race.

**WHEREFORE**, Plaintiff, Ryan Smith, prays for an award of special and general compensatory damages against Defendants in excess of Seventy-Five Thousand Dollars ($75,000.00), for an award of punitive damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), costs and attorney's fees of this action and for such other and further relief as this Court deems just and proper.

Respectfully submitted,
**HOLLOWAY BETHEA & OTHERS, PLLC**
3035 N.W. 63rd, Suite 102N
Oklahoma City, OK 73116
Telephone: (405) 246-0600
Facsimile: (405) 810-4080
kbethea@hbolaw.com
cgraham@hbolaw.com

By:   */s/ CHANDA R. GRAHAM*
KENYATTA R. BETHEA, OBA #18650
CHANDA GRAHAM, OBA # 17809
**ATTORNEY FOR PLAINTIFF**

**ATTORNEY LIEN CLAIMED**